IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SMILEDIRECTCLUB, LLC, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE |
| v. ) | NO: 1:18-cv-02328-WMR |
| ) | |
| GEORGIA BOARD OF DENTISTRY, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss [Doc. 29] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the American Association of Orthodontists' ("AAO") motion for leave to file an *Amicus Curiae* Response Brief [Doc. 46]. AAO's motion for leave to file an *Amicus Curiae* Response Brief [Doc. 46] is DENIED. After consideration of the arguments presented by the parties, the applicable law, and all appropriate matters of record, Defendants' Motion to Dismiss [Doc. 29] is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

The averments of the Complaint show that Plaintiff SmileDirectClub, LLC ("SmileDirect") is a dental service organization that provides services to contractually affiliated dentists in Georgia who wish to offer at-home clear teeth aligner treatment for cases of mild to moderate malocclusion, i.e. − improper

1

positioning of the teeth when the jaws are closed. (*See* Doc. 1, Complaint at ¶ 3).

In order to provide its services, SmileDirect operates various locations called SmileShops. A patient who wishes to receive at-home teeth alignment treatment would visit a SmileShop, where trained technicians would take digital scans and photos of the patient's teeth and gums. The digital scans and photos are sent to the SmileDirect lab, where they are used to create a 3D model of the patient's mouth, which, along with the digital scans and pictures, are provided to a Georgia-licensed dentist or orthodontist at another location for review and evaluation. The dentist or orthodontist then identifies any periodontal disease, cavities, or any other oral conditions that requires further investigation or which would prevent the patient from being a candidate for SmileDirect's clear aligners. (*See* Doc. 1, Complaint at ¶¶ 24-28). If the dentist or orthodontist determines that the patient may be appropriately treated with SmileDirect's clear aligners, then such professional will approve a patient-specific treatment plan for the patient. The treatment plan is shared with the patient online through SmileDirect's website portal. If the patient is satisfied with the treatment plan and elects to move forward with treatment, the dentist or orthodontist will write a prescription for the clear aligners. Throughout the treatment process, the licensed dentist or orthodontist maintains sole responsibility for all clinical decisions and all aspects of the patient's care. (*See* Doc. 1, Complaint at ¶¶ 29-30).

The Complaint further avers that, through the use of SmileShops and its web-based platform, SmileDirect has been able to reduce drastically the cost of expensive aligner treatment and increase access to aligner treatment for many unreached segments of the population, all while ensuring that patients receive alignment treatment that is approved of and closely monitored by Georgia-licensed dentists and orthodontists. (*See* Doc. 1, Complaint at ¶ 32).

Against this backdrop of consumers having less expensive treatment options for straightening their teeth, the Georgia Board of Dentistry voted to amend Georgia Board of Dentistry Rule 150-9-.02 to add, *inter alia*, a subparagraph (3)(aa) which expands the duties of "dental assistants" to require that digital scans taken for the purpose of fabricating orthodontic appliances and models to be made under the direct supervision of a licensed dentist.  SmileDirect contends that the amendment would preclude its technicians from taking the same type of digital scans at its SmileShop locations, where a dentist is not physically present, and later providing those scans and resulting 3D models to a Georgia-licensed dentist or orthodontist located offsite for evaluation and review. (*See* Doc. 1, Complaint at ¶¶ 34-38, and ¶58). SmileDirect alleges that the adoption of subparagraph (3)(aa) makes it virtually impossible for SmileDirect, and its affiliated Georgia-licensed dentists and orthodontists, lawfully to conduct business in Georgia without making costly and

prohibitive changes to SmileDirect's current business model. (*See* Doc. 1, Complaint at ¶ 43, and ¶ 58).

Accordingly, SmileDirect filed the instant lawsuit against the Georgia Board of Dentistry seeking a declaratory judgment that SmileDirect's practice of providing digital scan services to its affiliated dentists or orthodontists pursuant to the protocol described above does not constitute the practice of dentistry or dental hygiene within the meaning of O.C.G.A. §§ 43-11-1(6), 43-11-17(a), and 43-11-74, and is, therefore, outside the regulatory jurisdiction of the Georgia Board of Dentistry. (*See* Doc. 1, Complaint at ¶¶82-88). SmileDirect further asserts claims against the Georgia Board of Dentistry and its members (collectively, the "Defendants") seeking injunctive relief and damages for violations of 15 U.S.C §1, the Fourteenth Amendment, and 42 U.S.C. § 1983. (*See* Doc. 1, Complaint at ¶¶90-113). The Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12 (b)(6)], a complaint need only present sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1243-1244 (11th Cir. 2016) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "The complaint must 'raise a right to relief above the speculative level,' but it need not contain 'detailed factual allegations.'" Renfroe, 822 F3d at 1244 (quoting Twombly,

550 U.S. at 555). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims must be dismissed. Twombly, 550 U.S. at 570. "When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), however, the district court is free to independently weigh facts[.]" Turcios v. Delicias Hispanas Corp., 275 Fed. Appx. 879, 880 (11th Cir. 2008).

### III. ANALYSIS

#### A. Claim for declaratory relief (Count I).

SmileDirect seeks a declaratory judgment that SmileDirect's acts of providing digital scan services to its affiliated dentists or orthodontists does not constitute the practice of dentistry or dental hygiene within the meaning of O.C.G.A. §§ 43-11-1(6), 43-11-17(a), and 43-11-74, and is, therefore, outside the regulatory jurisdiction of the Georgia Board of Dentistry. SmileDirect's claim is incorrect.

Georgia's General Assembly, in enacting the Dental Practice Act, has given the Georgia Board of Dentistry significant authority to regulate the practice of dentistry. *See* O.C.G.A. § 43-11-7. Furthermore, O.C.G.A. § 43-11-1(6) defines "dentistry" as "the evaluation, diagnosis, prevention, or treatment . . . ,whether using surgical or non-surgical procedures, of diseases, disorders, or conditions . . . of the oral cavity, maxillofacial area, or the adjacent and associated structures . . .

including, but not limited to, the acts specified in Code Section 43-11-17." O.C.G.A. § 43-11-17, in turn, sets out a non-exclusive list of acts that constitute prima-facie evidence of the practice of dentistry. Among those acts are the examination of "any human oral cavity, teeth, gingiva . . . or associated structures or [taking] an impression for the purpose of diagnosing, treating, or operating upon the same[,]" O.C.G.A. § 43-11-17(a)(5), and any "attempts to correct a malposition" of the teeth (such as through the use of orthodontic appliances), O.C.G.A. § 43-11-17(a)(2).

Here, SmileDirect's acts of taking digital scans of a patient's mouth for the purpose of having a dentist or orthodontist approve of a treatment plan for correcting a malposition of the patient's teeth falls squarely within the definition of the practice of dentistry as set forth in O.C.G.A. § 43-11-1(6) and O.C.G.A. § 43-11-17(a)(2) and (a)(5). Accordingly, SmileDirect has failed to state a plausible claim for declaratory relief, and the Defendant's Motion to Dismiss [Doc. 29] is GRANTED as to Count I of the Complaint.

**B. Claims for violations of 15 U.S.C §1, the Fourteenth Amendment and 42 U.S.C. § 1983 (Counts II-IV).**

**1. Sovereign Immunity**

As a threshold matter, the Georgia Board of Dentistry argues that it is entitled to sovereign immunity under the Eleventh Circuit's decision in Versiglio v. Bd. of Dental Examiners of Alabama, 686 F.3d 1290 (11th Cir. 2012). This Court agrees.

The Georgia Board of Dentistry is protected by sovereign immunity because it was acting as an arm of the State when it engaged in the function at issue here—rulemaking.  In <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003), the Eleventh Circuit set out four factors to determine whether an entity is an arm of the State: "(1) how state law defines the entity; (2) what degree of control the state maintains . . . ; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. Each factor weighs in favor of sovereign immunity here:

- The Board is created by statute, O.C.G.A. § 43-11-7, and is a division of Georgia's Department of Community Health, O.C.G.A § 43-11-2.1(a), which is itself protected by sovereign immunity. Live Oak Consulting, Inc. v. Dep't of Cmty. Health, 281 Ga. App. 791 (2006). The Act refers to Board Members as state officials. See O.C.G.A § 43-11-6.

- The State maintains some control over the Board. The Governor appoints (and may remove) the Board Members. O.C.G.A. §§ 43-11-2, 43-1-14, 43-1-17. Georgia's Senate confirms all appointments. O.C.G.A § 43-1-16.  And the Board's rules are approved by the Governor. O.C.G.A § 43-1C-3.

- The Board is funded through state appropriations. See, e.g., Ga. House of Representatives, Budget & Research Office, General Appropriations Act, https://tinyurl.com/yb7u5snj. Further, licensing fees collected by the Board are remitted to the state treasury. O.C.G.A. § 43-1-3(a)(6).

- Georgia's Law Department is defending Defendants in this case.

In addition, Georgia's Court of Appeals has held that the Board is entitled to sovereign immunity. *See* <u>Georgia State Bd. of Dental Examiners v. Daniels</u>, 137 Ga.

App. 706, 707 (1976).  This Court should give "great deference" to that court's view. Versiglio, 686 F.3d at 1292.

As the Georgia Board of Dentistry is an arm of the State, SmileDirect's claims against the Board itself are barred by sovereign immunity and must therefore be DISMISSED.

However, SmileDirect's federal antitrust and constitutional claims may proceed against the Board members in their official capacities.  Although Eleventh Amendment ordinarily bars claims filed against state officials (sued in their official capacity) seeking retrospective or compensatory relief, *see* Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984), the United States Supreme Court has recognized an important exception to Eleventh Amendment immunity with regard to state officals.  Under the doctrine of Ex parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits which seek prospective relief against state officials to prevent them from violating federal law. *See* Pennhurst at 102; *see also* Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336-37 (11th Cir. 1999).

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (internal quotation marks omitted).

8

The bulk of SmileDirect's Complaint (Doc. 1) satisfies that standard.  However, in portions of the Complaint, SmileDirect seeks to recover damages for the injuries it has sustained as a result of the amended Rule.  To the extent that Smile Direct seeks to recover damages in Counts II-IV for any injuries it has sustained, those portions of the claims do not satisfy the exception of Ex parte Young and are, thus, barred by sovereign immunity.  Accordingly, the motion to dismiss is GRANTED as to the portions of the claims in Counts II-IV that seek compensatory damages from the Board members.

To the extent that the Counts II-IV seek an injunction restraining the Board members from prospective enforcement of the amended Rule in contravention of controlling federal law, specifically, various provisions of the U.S. Constitution and the Sherman Antitrust Act, those portions of the claims in Counts II-IV may proceed against the Board members.  It is well settled that a plaintiff may properly assert claims for prospective injunctive relief against state officials alleged to be violating federal law. *See* Verizon Maryland, 535 U.S. at 645-646.  Moreover, prospective relief is equally available whether the law that state officials are allegedly violating is a federal statute (like the Sherman Act) or the Constitution. *See* id. (permitting suit for prospective relief against state officials alleged to be violating a federal statute and administrative order); Doe 1-13 By & Through Doe, Sr. 1-13 v. Chiles, 136 F.3d 709, 720-21 (11th Cir. 1998) (affirming prospective injunctive relief forbidding state

officials from continuing to violate a federal statute); Edelman v. Jordan, 415 U.S. 651, 664 (1974) (explaining that Ex parte Young permits suits to enjoin state officials from prospectively violating the Constitution).

Here, SmileDirect seeks injunctive relief to prevent the future enforcement of Rule 150-9-.02(3)(aa), which Smile Direct alleges is in violation of federal statutory and constitutional law. (*See* Doc. 1, Complaint at ¶¶ 90-113; *see also* Complaint at p. 36, Prayer for Relief). To the extent that Counts II-IV seeks prospective injunctive relief, the Court holds that SmileDirect's claims against the Board members fall squarely within the Ex parte Young exception to Eleventh Amendment immunity.

### 2. Sherman Antitrust Claim (Count II)

The Sherman Act prohibits any unreasonable "contract, combination . . ., or conspiracy, in restraint of trade." 15 U.S.C. § 1. A plaintiff pleads an antitrust claim by alleging facts manifesting a "unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement," or "a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764 (1984) (quotation marks omitted).

Here, the Complaint asserts that there is evidence of concerted action on the part of the Board members: "the Defendants have agreed and acted upon a policy of excluding non-dentists from providing digital scans without the direct supervision

of dentists, thereby harming competition in the Relevant Market. This agreement among Defendants is expressly stated in Subparagraph (aa) of Rule 150-9-.02(3)." (*See* Doc. 1, Complaint at ¶ 91). The Complaint further alleges that Defendants' concerted action unreasonably restrains trade by "depriv[ing] dentists that utilize a new, more efficient method of competition of a fair opportunity to compete in the Relevant Market . . . [and] reduc[ing] the number of providers of aligner treatment in Georgia and the output of such services." (*See* Doc. 1, Complaint at ¶ 98; see also id. at ¶¶ 49-52, 89-99).

These allegations are sufficient to plausibly allege concerted action. See N.C. State Bd. of Dental Exam'rs v. FTC, 717 F.3d 359, 373 (4th Cir. 2013) (direct evidence of concerted action where "the Board discussed teeth whitening services provided by non-dentists and then voted to take action to restrict those services"), aff'd, 135 S. Ct. 1101 (2015). Allegations of express agreement "'require[] no inferences to establish the proposition or conclusion being asserted.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 324, n.23 (3d Cir. 2010). While SmileDirect ultimately may not be able to prove concerted action to unreasonably restrained trade, the Complaint is sufficient to survive the motion to dismiss as it relates to the Board members.

The Board member defendants also contend that the antitrust claim should be dismissed because they are entitled to state-action immunity from the Sherman Act

11

claim under Parker v. Brown, 317 U.S. 341 (1943) and its progeny. However, the United States Supreme Court clearly has held that "a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy certain requirements in order to invoke state-action antitrust immunity." N.C. State Bd. of Dental Exam'rs v. FTC, 135 S. Ct. 1101, 1114 (2015). Because the Complaint alleges that a majority of the Board members are active market participants (dentists), Defendants must show "first that 'the challenged restraint … be one clearly articulated and affirmatively expressed as state policy,' and second that 'the policy . . . be actively supervised by the State.'" Id. at 1110 (quoting California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105 (1980)).

Considering the specific facts alleged in the Complaint at the motion to dismiss stage, Defendants have not satisfied the active supervision requirement. Although Defendants have provided a "Certification of Active Supervision" signed by the Governor which approves the amendment to Rule 150-9-.02 (*See* Doc. 29-2), SmileDirect alleges in its Complaint that the Board "fail[ed] to fully advise the Governor of the reasons for its actions and the objections to its actions," that "the Board's official minutes fail to provide a full and complete summary of objections to the Board's action expressed during official Board meetings," and that the Board failed to inform the Governor of the consumer impact of the amendment or disclosed

the conflicts of interest. (*See* Doc. 1, Complaint at ¶ 45). Thus, the Complaint reveals a well-pleaded factual dispute that is not resolved by the Certification of Active Supervision. Only discovery will determine whether the Board provided all relevant information to the Governor, whether the proposed amendment was subjected to any meaningful review by the Governor, or whether the Certification of Active Supervision was merely "rubberstamped" as a matter of course. *See* Patrick v. Burget, 486 U.S. 94, 101 (1988) ("[t]he mere presence of some state involvement or monitoring does not suffice" to meet the active supervision requirement).[1]

Accordingly, the Court finds that a definitive ruling on Parker immunity would be premature at this stage, that SmileDirect's Sherman Act anititrust claim, as pleaded, is sufficient to survive a Rule 12(b)(6) motion to dismiss on Parker immunity grounds, and that further factual development is required to determine whether the Board members are entitled to Parker immunity. The Board members may therefore raise the Parker immunity defense at a later stage in this litigation, such as in a motion for summary judgment, if appropriate.

---

[1] The Court also rejects Defendants' contention that the intra-corporate immunity doctrine applies. "The relevant inquiry" is whether Defendants are "separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decision making … and thus of actual or potential competition." Am. Needle, Inc. v. Nat'l Football League, 560 U.S. 183, 195 (2010) (citations and quotation marks omitted). The Complaint plausibly alleges that the majority of Defendants are actual or potential competitors to SmileDirect (see Doc. 1, Complaint at ¶¶ 4-14), and there is no basis to ignore this factual allegation at the pleading stage. *See* N.C. State Board, 717 F.3d at 371-72 (practicing dentists on Board were "actual or potential competitors" with "the capacity to conspire").

### 3.  Constitutional Claims — Equal Protection (Count III) and Substantive Due Process (Count IV)

SmileDirect's constitutional claims are subject to rational-basis review, which asks "(1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." Blue Kendall, LLC v. Miami Dade County, 816 F.3d 1343, 1351 (11th Cir. 2016).

SmileDirect alleges that subparagraph (3)(aa) of the Rule creates an arbitrary distinction between persons or entities who offer digital scans by technicians (such as SmileDirect) and those who offer digital scans by expanded duty dental assistants acting under the direct supervision of a licensed dentist or orthodontist.  (*See* Doc. 1, Complaint at ¶ 102).  While Defendants contend that the Rule promotes health and safety, the Complaint alleges that digital scans present no health or safety risk to a customer — pointing out that SmileDirect has performed hundreds of thousands of scans nationwide without a single complaint of an adverse patient outcome and that there is no known evidence that digital scans taken under the "direct supervision" of a licensed dentist or orthodontist are safer or more accurate than SmileDirect's scans. (*See* Doc. 1, Complaint at ¶¶ 41, 61, 71).  While Defendants may disagree with the Complaint's factual allegations, this dispute cannot be resolved at the motion-to-dismiss stage.  Construing the facts most favorably to

SmileDirect, the Court concludes that the Complaint adequately sets forth a plausible equal protection claim.

SDC also alleges that the Rule deprives it of liberty and property interests by imposing restrictions on its ability to offer digital scans that are not rationally related to any legitimate governmental interest. (*See* Doc. 1, Complaint at ¶ 110). The Court notes that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." Craigmiles v. Giles, 312 F.3d 220, 224 (6th Cir. 2002). Here, SmileDirect alleges that the Rule "is merely designed to protect the business interests of traditional orthodontic practices" and that any purported health benefits are purely pretextual. (*See* Doc. 1, Complaint at ¶¶ 52, 58, 65-71). These allegations are sufficient to state a viable due process claim.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED as follows:

- AAO's motion for leave to file an *Amicus Curiae* Response Brief [Doc. 46] is **DENIED**;

- Defendants' Motion to Dismiss [Doc. 29] is **GRANTED** with respect to SmileDirect's declaratory judgment claim in Count I of the Complaint;

- Defendants' Motion to Dismiss [Doc. 29] is **GRANTED** with respect to the claims against Defendant Georgia Board of Dentistry in Counts II-IV for lack of subject matter jurisdiction, and said claims are DISMISSED

WITHOUT PREJUDICE.  The Clerk of Court is DIRECTED to terminate Defendant Georgia Board of Dentistry in its docket; and

- Defendants' Motion to Dismiss [Doc. 29] is **DENIED** with respect to the claims in Counts II-IV against the Board member defendants.

**IT IS SO ORDERED** this 8th day of May, 2019.

WILLIAM M. RAY, II
United States District Judge
Northern District of Georgia