IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SMILEDIRECTCLUB, LLC,
        Plaintiff,

                        v.

TANJA D. BATTLE, *et al.*,
        Defendants.

Civil Action No.
1:18-cv-02328-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss [ECF 121].

After careful consideration and with the benefit of oral argument, their motion is

**GRANTED**, and the case is **DISMISSED WITHOUT PREJUDICE**.

## I.    Background

The following well-pled facts are taken as true.[1] Plaintiff SmileDirectClub,

LLC (SDC) is a self-described dental services organization that provides support

services to contractually affiliated dental practices that offer at-home teledentistry

aligner treatment for mild to moderate malocclusion.[2] Put plainly, SDC is in the

teeth straightening business.

---

[1]  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]  ECF 1, ¶¶ 3, 20.

As its "support services" pertain to this case, SDC operates "SmileShops," brick-and-mortar storefronts where SDC technicians employ iTero scanner devices to take thousands of images of a patient's teeth.[3] With these images, SDC creates a 3D digital model of a patient's mouth and a "treatment plan" (the scanning business).[4] SDC sends these items to a Georgia-licensed dentist or orthodontist for review and evaluation.[5] If the patient is deemed a good candidate for treatment, the dentist or orthodontist prescribes an SDC aligner.[6]

Enter Defendants and the Georgia Board of Dentistry (the Board). The Board, under the authority of the Georgia Dental Practice Act (the Act),[7] regulates the practice of dentistry in the State of Georgia, including the duties of support personnel falling within the Act's scope.[8] Pursuant to its purported authority under the Act, the Board approved an amendment to Rule 150-9-.02 on January 24, 2018. The disputed amendment, Rule 150-9-.02(3)(aa) (the Rule) added "[d]igital scans for fabrication [of] orthodontic appliances and models" to the list

---

[3]   *Id.* ¶ 25.

[4]   *Id.* ¶¶ 26–28.

[5]   *Id.* ¶¶ 27, 31.

[6]   *Id.* ¶¶ 28, 29, 31.

[7]   O.C.G.A. § 43-11-1, *et seq.*

[8]   *Id.* § 43-11-9; *see also* ECF 1, ¶ 4.

of "expanded" duties licensed dental practitioners may delegate to dental assistants meeting certain criteria.[9]

Following the promulgation of the Rule, SDC initiated this lawsuit on May 21, 2018.[10] SDC avers that the Board exceeded its authority under the Act in promulgating the Rule (Count I),[11] and that Defendants violated the Sherman Antitrust Act, 15 U.S.C. § 1, and SDC's rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses (Counts II–IV).[12] For Count I, brought against the Board only, SDC sought a declaratory judgment that the Rule is an invalid exercise of the Board's authority, and an injunction prohibiting the Board from enforcing the Rule against SDC.[13] SDC's principal argument related to that claim, which underpins each of its claims, is that, "[a]s written, [the Rule] will require digital scans in Georgia to be made in a dentist's office under the direct supervision of a licensed dentist . . . [and] severely impair[s] SDC's ability to deliver . . . products and services . . . without making costly and prohibitive

---

[9]  ECF 1, ¶ 38.

[10]  *See generally id.*

[11]  *Id.* ¶¶ 81–88.

[12]  *Id.* ¶¶ 89–99 (Count II: Violation of 15 U.S.C. § 1), 100–106 (Count III: Equal Protection Violation), 107–113 (Count IV: Due Process Violation).

[13]  *Id.* at 36.

changes to SDC's current business model."[14] SDC further avers that the Board exceeded its rulemaking authority because the scanning business does not constitute the practice of dentistry under the Act.[15]

On November 21, 2018, the Board and Defendants moved to dismiss the Complaint. On May 8, 2019, U.S. District Court Judge William M. Ray, II denied the motion (the Order) as to SDC's Sherman Act, Equal Protection, and Due Process claims against Defendants (the Board members) in their official capacities. He determined that SDC had alleged a plausible antitrust claim and that it was premature to rule on the question of state-action immunity.[16] However, Judge Ray dismissed SDC's declaratory judgment claim against the Board itself, holding that enactment and promulgation of the Rule was not outside the Board's authority.[17] He concluded that "taking digital scans of a patient's mouth for the purpose of having a dentist or orthodontist approve of a treatment plan for correcting a malposition of the patient's teeth falls squarely within the definition of dentistry as set forth in [the Act]."[18] The Board was therefore terminated from this case on

---

[14]  *Id.* ¶¶ 38, 42–43.

[15]  *Id.* ¶¶ 49–52.

[16]  *See generally* ECF 51.

[17]  *Id.*

[18]  *Id.* at 6 (citing O.C.G.A. § 43-11-1(6); O.C.G.A. § 43-11-17(a)(2) and (a)(5)).

May 8, 2019, and on June 5, the parties jointly moved to dismiss their non-equitable claims for damages with prejudice.[19]

Defendants appealed on June 7, 2019.[20] SDC did not appeal the dismissal of its claims against the Board. The Eleventh Circuit panel affirmed with respect to SDC's antitrust claims on August 11, 2020.[21] On July 20, 2021, after reconsidering the case *en banc*, the Eleventh Circuit dismissed the appeal for lack of appellate jurisdiction.[22] The mandate issued on August 18.[23] On November 22, Defendants moved to dismiss the remaining claims in the Complaint for lack of Article III standing.[24]

## II.    Discussion

### A.    The Law on Standing and Jurisdiction

Standing is jurisdictional. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). Challenging a plaintiff's standing to

---

[19]   ECF 55. On December 12, 2019, this Court granted the motion and dismissed SDC's non-equitable claims. ECF 83.

[20]   ECF 57.

[21]   ECF 94.

[22]   ECF 104.

[23]   ECF 106.

[24]   ECF 121.

bring a case is akin to seeking dismissal for lack of subject matter jurisdiction. *Id.* Defendants' motion advances a facial attack on the Complaint. *Id.* (discussing the differences between facial and factual attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)). As with any facial attack on a complaint, Defendants' motion requires the Court to accept SDC's allegations as true and determine whether, considering those facts, SDC has sufficiently alleged a basis for standing. *Id.* In other words, the Court must determine whether SDC has pleaded: (1) an actual or imminent injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) the likelihood that the injury can be redressed by the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

### B.    Defendants' Redressability Challenge

Of the standing elements, Defendants' motion only contests redressability — to wit, whether it is "'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (citation omitted). SDC's remaining claims (for injunctive relief under Counts II–IV) seek to enjoin enforcement of the Rule, not the Act. Defendants correctly point out that, when a plaintiff's conduct is prohibited by two laws, and the plaintiff only challenges one of them, its alleged injury is not redressable. *KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1304 (11th Cir. 2007). So, while SDC's *ultra vires* argument goes to

whether its conduct can properly be restricted by the Rule, its contention that its scanning business is not the practice of dentistry under the Act affects whether that business is subject to regulation by the Board at all. As Defendants' argument goes, SDC's alleged injuries cannot be redressed by disposal of the Rule alone—because SDC would still be subject to regulation under the Act—thus SDC has no standing to assert its claims, and the Court has no jurisdiction to evaluate them.[25]

SDC raises two counterarguments. First, it insists that the Order did not conclude that SDC's scanning business constitutes the practice of dentistry under the Act—and that no party raised this issue before now.[26] Second, SDC maintains that the Rule, not the Act, targets SDC's scanning business, so SDC's alleged injury is redressable.[27] The Court addresses each point in turn.

### 1.    SDC's Scanning Business and the Practice of Dentistry

#### i.    The Dismissal Order

The parties dispute the scope of the Order dismissing Count I of the Complaint. In that cause of action, SDC sought a declaration that its scanning business "does not constitute the practice of dentistry or dental hygiene within the

---

[25]   ECF 121, at 7.

[26]   ECF 129, at 14–19.

[27]   *Id.* at 19–26.

meaning of the Act."[28] The Board moved to dismiss on Eleventh Amendment grounds, arguing that sovereign immunity prevented the Court from reaching the merits of this claim.[29] SDC countered that the Board's actions were *ultra vires*—that is, they exceeded the scope of power granted to it by the Georgia General Assembly pursuant to the Act.[30] More specifically, SDC called into question whether its scanning business constitutes the practice of dentistry under the Act, and contended the answer to that question required expert discovery.

In the instant motion to dismiss, Defendants maintain the Order necessarily determined that SDC's scanning practice constitutes dentistry because SDC collapsed its *ultra vires* argument with Count I's merits.[31] In other words, they maintain that SDC's *ultra vires* argument called for the Court to determine the scope of the Board's authority, and directed the Court's focus toward the precise issue raised by Count I: whether digital scans are dentistry under the Act.[32] As evidence of SDC's intent that the Order affirmatively answer this question, Defendants point to the proposed order SDC filed, which would have accepted as

---

[28]   ECF 1, ¶ 87 (citations omitted).

[29]   ECF 29-1, at 10–14.

[30]   ECF 30, at 12–15.

[31]   ECF 140, at 8, 26.

[32]   ECF 135, at 10.

true that SDC's scanning business does not constitute dentistry under the Act and held that the Board acted *ultra vires* in regulating that business.[33]

SDC responds that the Order did not hold that the Act (independently of the Rule) prohibits SDC's scanning business because Defendants and the Board never raised that issue: "To the contrary, the Court issued its ruling in response to SDC's claim seeking a declaratory judgment that the Board's enactment of the [Rule] fell outside its authority to regulate the practice of dentistry."[34] In SDC's view, the Order "was saying that the [ ] Board has . . . authority under the [ ] Act to enact rules[,] and [the Court] was not determining for all purposes going forward in the litigation that in fact what [SDC] is doing is the practice of dentistry."[35]

The best indication of the scope of the Order is what the Order actually says:

> [SDC] filed the instant lawsuit against the [Board] seeking a declaratory judgment that [SDC]'s [scanning business] ***does not constitute the practice of dentistry or dental hygiene*** within the meaning of O.C.G.A. §§ 43-11-1(6), 43-11-17(a), and 43-11-74, and is, therefore, outside the regulatory jurisdiction of the [Board].[36]

---

[33]  *Id.* (citing ECF 135-4, at 11).

[34]  ECF 129, at 14 (citing ECF 1, ¶ 87).

[35]  ECF 140, at 20; *see also* ECF 129, at 15 (citing ECF 51, at 5–6).

[36]  ECF 51, at 4 (emphasis added) (citing ECF 1, ¶¶ 82–88). *See also id.* at 5.

. . . .

> [SDC]'s [scanning business] . . . *falls squarely within the definition of the practice of dentistry* as set forth in O.C.G.A. § 43-11-1(6) and O.C.G.A. § 43-11-17(a)(2) and (a)(5). Accordingly, [SDC] has failed to state a plausible claim for declaratory relief . . . .[37]

The Order thus plainly concluded that SDC had made the issue of whether its scanning business constituted the practice of dentistry central to its Count I cause of action.

Moreover, as Defendants contend, SDC's arguments with regard to Count I did "collapse[ ] the merits with the *ultra vires* issue."[38] During oral argument before Judge Ray, SDC's counsel entangled whether SDC's scanning business could be regulated either under the Rule or the Act itself:

> MR. CASHDAN: . . . . What we're saying is that they lack authority. They do not have authority to be regulating what they're regulating here.
>
> THE COURT: Because you say it's not dentistry.
>
> MR. CASHDAN: Because it's not dentistry. And that's a combination of law and fact. We agree with that. But we've alleged facts as to why it's not the practice of dentistry, and that's the issue that the parties should be

---

[37]  *Id.* at 6 (emphasis added).

[38]  ECF 140, at 8; *see also id.* at 28.

> addressing. We don't get to decide that factual question
> by looking beyond the complaint's allegations.[39]

Even assuming the Complaint's well-pleaded facts support the reasonable inference that the iTero scanner is safer than typical dentistry accouterment, or that SDC's scanning business requires a less skilled hand or less supervision than typical dental practice and is therefore atypical of dentistry, no court is required to accept as true a party's legal conclusion. Specifically, while it relies on an assessment of the well-pleaded facts, the ultimate question of whether SDC's scanning business is the practice of dentistry within the meaning of the Act is a legal one. This is despite the language in the Complaint, which "couched [it] as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). And this is especially true considering (1) SDC's factual allegations (discussed below) that belie its conclusion that its scanning practice does not constitute dentistry, and (2) that SDC conceded the question of whether its scanning practice constituted dentistry was a mixed question of law and fact.

Though SDC suggested discovery was necessary, the Order examined the face of the Complaint, accepted SDC's well-pleaded facts as true, and concluded

---

[39]   ECF 49, at 39.

that SDC's scanning business does constitute the practice of dentistry. Given the language of the Order itself and the Court's colloquy with SDC's counsel at oral argument, the determination of whether SDC's scanning business constitutes the practice of dentistry under the Act was plainly a predicate to the Order's conclusion about whether the Board's action in adopting the Rule was *ultra vires*—and that the facts as pleaded were sufficient to answer that blended question.

In any case, if the Order ruled on a question that the parties did not then raise, it was incumbent upon them to seek reconsideration. Fed. R. Civ. P. 54(b); NDGa, LR 7.2(E). At this juncture, however, the Order's predicate holding—that SDC's scanning practice constitutes dentistry—is indivisible from the conclusion that Count I should be dismissed. The Order speaks for itself, and this Court will not abjure its plain language absent persuasive proof that doing so furthers the administration of justice. *See, e.g.*, *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984) (citation omitted) ("It is recognized that when cases are transferred from one judge to another judge in the same court, the transfer should not be treated as an opportunity to relitigate all the questions decided by the first judge."); *Abshire v. Seacoast Prod., Inc.*, 668 F.2d 832, 837–38 (5th Cir. 1982) (citations omitted) ("The general rule is that when a district judge has rendered an order or judgment and

the case is then transferred to the calendar of another judge, the successor judge should not overrule the earlier order or judgment.").

### ii.   The Practice of Dentistry Under the Act

Notwithstanding SDC's contention that Defendants never raised the issue of whether SDC's scanning business constitutes dentistry as a matter of law, the parties now unmistakably raise it. Regardless of the reasons for this,[40] it is irrelevant: Standing and jurisdiction cannot be waived. *In re Heatherwood Holdings, LLC*, 746 F.3d 1206, 1216 (11th Cir. 2014) ("[P]arties cannot waive subject matter jurisdiction, and we may consider subject matter jurisdiction claims at any time during litigation.") (citations omitted). Assessing the Complaint within the framework of the Act, SDC's scanning business inarguably constitutes the practice of dentistry.

The Act prohibits the unlicensed practice of dentistry. It expansively defines dentistry as "evaluation, diagnosis, prevention, or treatment . . ., whether using surgical or non-surgical procedures, of diseases, disorders, or conditions . . . of the oral cavity, maxillofacial area, or the adjacent and associated structures . . . ***including, but not limited to***, the acts specified in Code Section 43-11-17." O.C.G.A.

---

[40]   SDC hints that gamesmanship is afoot. ECF 135, at 6 (discussing Defendants' efforts to raise and re-raise their standing defense).

§ 43-11-1(6) (emphasis added). And if that nonexclusive list were not enough to capture SDC's scanning business, Code Section 43-11-17 includes, as an example, the "examin[ation of] any human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures or . . . an impression thereof for the purpose of diagnosing, treating, or operating upon the same," O.C.G.A. § 43-11-17(a)(5), as well as "attempts to correct a malposition thereof." O.C.G.A. § 43-11-17(a)(2).

The nonexclusive list set out in Code Section 43-11-17 does not expressly include taking "digital scans," but such specificity is not required given the Act's open-ended and inclusive construction. *Arby's Rest. Grp., Inc. v. McRae*, 292 Ga. 243, 245 (2012) (noting courts interpreting Georgia statutes are to "presume that the General Assembly meant what it said and said what it meant.") (citation omitted); *Aimwell, Inc. v. McLendon Enters., Inc.*, 318 Ga. App. 394, 397 (2012) (noting that the court must "avoid constructions that make some language mere surplusage or meaningless, construe a statute in relation to other statutes of which it is a part, and construe together and harmonize all statutes relating to the same subject-matter wherever possible.") (citation omitted) (cleaned up). Following the canons of construction, the Court need not strain to compare SDC's scanning business to a "radiograph," O.C.G.A. § 43-11-17(a)(8), an "impression," *id.* § 43-11-

17(a)(5), or any other example expressly listed by the Georgia General Assembly as constituting *prima facie* evidence of the practice of dentistry. The Complaint makes clear that SDC's scanning business is nothing if not the "examin[ation of] any human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible . . . for the purpose of diagnosing, treating, or operating upon the same," consistent with the Act's definition of dentistry. *Id.* § 43-11-17(a)(5).

To relieve any doubt, the Court looks to the face of the Complaint and accepts its allegations as true. In short, SDC technicians "take thousands of photographs of a customer's teeth and gums."[41] "The digital scan consists of thousands of photographs, which generate a 3D model of the patient's maxillary and mandibular dentition, along with the attached gingiva and supporting oral mucosa . . . ."[42] SDC "create[s] a model treatment plan," which a Georgia-licensed dentist or orthodontist reviews.[43] Importantly, SDC's scanning business is admittedly "necessary for SDC's licensed dentists and orthodontists to provide

---

41   ECF 1, ¶ 26.

42   *Id.* ¶ 27.

43   *Id.* ¶ 26.

aligner treatment . . . ."[44] Under these facts, the Court has no qualm in reaffirming that SDC's scanning business constitutes the practice of dentistry under the Act.

### 2.     The Rule, the Act, and Redressability

The parties next dispute if the Court can determine at the motion to dismiss stage whether the Rule and Act regulate the same conduct such that SDC's remaining claims (Counts II–IV) are not redressable because of their failure to challenge the Act. Because the Rule and the Act each prohibit SDC's scanning business, no additional discovery is necessary to resolve SDC's remaining claims.

The Rule prohibits SDC's conduct as alleged. As the Eleventh Circuit panel decision noted, the "practical effect of the [Rule] w[as] . . . to require that digital scans, like the ones [performed] by [SDC] at [its locations,] only take place when a licensed dentist is physically in the building where the scans are taking place, and to prohibit them otherwise." S*mileDirectClub, LLC v. Battle*, 969 F.3d 1134, 1137 (11th Cir. 2020). Although that appellate order has been vacated, *SmileDirectClub, LLC v. Battle*, 981 F.3d 1014 (11th Cir. 2020), this conclusion remains sound.

The Act independently prohibits the unlicensed practice of dentistry. O.C.G.A. § 43-11-50. As SDC alleges, an unlicensed and unsupervised "technician

---

[44]   *Id.* ¶ 25.

or assistant" performs each scan.[45] So, SDC's scanning business, which amounts to the unlicensed practice of dentistry under the Act, is precluded by the Act.

The only remaining question is whether, on this record, the Court can dismiss SDC's remaining claims for lack of standing because it did not challenge the Act. The controlling case on this point is *KH Outdoor, L.L.C. v. Clay County, Florida*, 482 F.3d 1299 (11th Cir. 2007). There, a billboard company sought to erect billboards in contravention of an old county sign ordinance. *Id.* at 1301. The parties cross-moved for summary judgment, but the district court denied the motions and dismissed the case as moot, reasoning that a newer sign ordinance superseded the old sign ordinance, and any allegedly unconstitutional portions of the old ordinance were either not retained by the new ordinance or, if retained, were severable from the new ordinance. *Id.* On appeal, the Eleventh Circuit held that the billboard company's injury—the inability to erect signs—was not redressable because, regardless of the old ordinance, "[the county] could block the proposed signs by enforcing [the state building code and other state statutes] not challenged." *Id.* at 1304; *see also Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.*, 528 F.3d 817, 819 (11th Cir. 2008) (finding an unchallenged county ordinance

---

45   ECF 1, ¶ 25.

independently prohibited the erection of the plaintiff's billboards, and thus the county could have blocked the erection "under an alternative, unchallenged provision of its sign ordinance").

*KH Outdoor*'s significance reaches beyond county sign permitting laws and regulations. *See Tokyo Gwinnett, LLC v. Gwinnett Cnty., Ga.*, 940 F.3d at 1254 (applying *KH Outdoor* and *Maverick Media* to county zoning laws and noting that "[t]he County is right to say that some cases from our Circuit have concluded that a plaintiff's claims were not redressable because a different, unchallenged provision precluded relief," but reasoning that those cases "featured no genuine factual dispute" about whether another unchallenged rule or regulation prohibited the same conduct at issue); *see also Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1415 (11th Cir. 1985) (explaining that the court was "unable to ascertain from the record whether the relief requested is likely to redress the alleged injury" because "[t]he challenged regulation is merely a method of effectuating congressional dictates" and "only the striking down of the statute itself, a remedy not requested in this complaint, could relieve appellant's injury").

The parties agree that the cases controlling this dispute were uniformly resolved at summary judgment, not on a motion to dismiss. SDC argues that this counsels against granting Defendants' motion to dismiss, and that the Court

should allow additional discovery.[46] Defendants respond that "not all cases have genuine factual disputes[,] and [this] case [does not]."[47]

The Court agrees with Defendants. True, in *Tokyo Gwinnett* the Eleventh Circuit cautioned that "to the extent . . . the District Court . . . question[ed] its jurisdiction, the District Court should have conducted further proceedings, rather than dismissing the complaint on little more than the [plaintiff]'s bare assertions." 940 F.3d at 1266. Unlike the trial court in *Tokyo Gwinnett*, however, this Court has no such uncertainty about its jurisdiction. As in *KH Outdoor* and *Maverick Media*, this case involves "[an] unchallenged provision[ ] that preclude[s] relief." *Id.* (citing *KH Outdoor*, 482 F.3d at 1303–04; *Maverick Media*, 528 F.3d at 821 (holding 14′ x 48′ sign "clearly exceed[ed] the size limitations" in other unchallenged ordinances)). SDC's challenge of the Rule alone cannot redress its alleged injury. Thus, the Court does not have subject matter jurisdiction over SDC's remaining claims (Counts II–IV).

---

[46]   ECF 140, at 20–22.

[47]   *Id.* at 14.

### III.   Conclusion

SDC's Complaint is **DISMISSED WITHOUT PREJUDICE**. SDC may seek leave to file an amended complaint in compliance with this Order. If, after 14 days, SDC does not file a motion for leave to amend its complaint, the dismissal will be considered with prejudice and the Clerk of Court may close the case at that time. Discovery shall be stayed until such time as the Court resolves any motion for leave to amend the complaint.

Further, since the date that SDC initiated this lawsuit, Defendants Tracy Gay, Rebecca Bynum, and Bert Yeargan have left their positions on the Board and were replaced by Misty A. Mattingly, Larry W. Miles, Jr., and David A. Reznik. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). The Clerk is **DIRECTED** to **SUBSTITUTE** these parties accordingly, and to **TERMINATE** Tracy Gay, Rebecca Bynum, and Bert Yeargan from this action.

**SO ORDERED** this 15th day of July, 2022.

Steven D. Grimberg
United States District Court Judge