IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SMILEDIRECTCLUB, LLC,
    Plaintiff,

                v.

ERIC LACEFIELD, *et al.*,
    Defendants.

Civil Action No.
1:18-cv-02328-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiff SmileDirectClub, LLC's (SDC)

motion for leave to amend its complaint [ECF 148]. For the following reasons, the

motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Background

The Court incorporates by reference its statement of facts as set out in its

July 15, 2022 Order.[1] For purposes of this Order, it is sufficient to note that this is

an action to enjoin the Georgia Board of Dentistry's (the Board) regulation of the

dentistry business in an allegedly discriminatory and anticompetitive manner.

Defendants are the members of the Board in their official capacities.

SDC is in the teeth-straightening business and runs brick-and-mortar

storefronts where SDC's non-dentist technicians employ iTero scanner devices to

---

[1]    ECF 146.

take thousands of images of a patient's teeth. SDC then creates a model from these images, which a licensed dentist uses to prescribe aligner treatment.

SDC asserts that, prior to SDC's entry into the Georgia market, digital scans were commonly performed by technicians, hygienists, or assistants at dental practices.[2] Allegedly, because of SDC's self-stated proclivity for disrupting the dental industry, the Board attempted to regulate digital scanning for the first time "with the specific goal of inhibiting SDC's ability to compete effectively."[3] The Board did so by leveraging its authority under the Georgia Dental Practice Act (the Act) to purportedly broaden the duties that "expanded-duty dental assistants" may perform to include "[d]igital scans for fabrication [of] orthodontic appliances and models."[4] Ga. Bd. of Dentistry R. 150-9-.02(3)(aa) (the Rule). Rather than widening those duties, however, the Rule allegedly had the intended effect of restricting the categories of individuals who could perform scans because it (1) precluded those who are not expanded-duty dental assistants from performing the scans, and (2) required that scans be performed under a licensed dentist's or orthodontist's "direct supervision" — that is, while the dentist or orthodontist is in

---

[2]  ECF 148-1, ¶ 2.

[3]  *Id.*

[4]  *Id.*

the same building as the expanded-duty dental assistant.[5] SDC avers that, whether by its promulgation of the Rule or pursuant to its authority under the Act, the Board's (and, by extension, Defendants') actions have no rational basis to any legitimate government interest and amount to concerted anticompetitive action.[6]

SDC initiated this action on May 21, 2018.[7] On November 21, 2018, the Board and Defendants moved to dismiss the complaint. On May 8, 2019, U.S. District Court Judge William M. Ray, II denied the motion as to SDC's Sherman Act, Equal Protection, and Due Process claims against Defendants. He determined that it was premature to rule on the question of state-action immunity, too.[8] However, Judge Ray dismissed SDC's declaratory judgment claim against the Board itself, holding that enactment and promulgation of the Rule was not outside the Board's authority.[9] He concluded that "taking digital scans of a patient's mouth for the purpose of having a dentist or orthodontist approve of a treatment plan for correcting a malposition of the patient's teeth falls squarely within the definition

---

[5]   *Id.*

[6]   *Id.* ¶ 3.

[7]   *See generally id.*

[8]   *See generally* ECF 51.

[9]   *Id.*

of dentistry as set forth in [the Act]."[10] The Board was therefore terminated from this case on May 8, 2019, and, on June 5, the parties jointly moved to dismiss their non-equitable claims for damages with prejudice.[11]

Defendants appealed the denial of their motion to dismiss on June 7, 2019.[12] SDC did not appeal the dismissal of its claims against the Board. The Eleventh Circuit panel affirmed with respect to SDC's antitrust claims on August 11, 2020, allowing those claims to proceed.[13] On July 20, 2021, after reconsidering the case *en banc*, the Eleventh Circuit dismissed the appeal for lack of appellate jurisdiction.[14] The mandate issued on August 18.[15] On November 22, Defendants moved to dismiss the remaining claims in the complaint for lack of Article III standing.[16]

With respect to that initial complaint, the Court granted Defendants' motion to dismiss on July 15, 2022. Based on Judge Ray's conclusion that scanning

---

[10]   *Id.* at 6 (citing O.C.G.A. § 43-11-1(6); *id.* § 43-11-17(a)(2), (a)(5)).

[11]   ECF 55. On December 12, 2019, this Court granted the motion and dismissed SDC's non-equitable claims. ECF 83.

[12]   ECF 57.

[13]   ECF 94.

[14]   ECF 104.

[15]   ECF 106.

[16]   ECF 121.

constituted the practice of dentistry and SDC's pleadings, which did not allege any violation of the Act, the Court reasoned that any order striking down the Rule would not redress SDC's injuries.[17] Accordingly, the Court held that SDC did not have standing and dismissed its claims.[18] However, the Court invited SDC to move to amend its pleading.[19]

On July 29, 2022, SDC filed a motion for leave to amend its original complaint. SDC's proposed amended complaint pleads five claims against the Board's current members: (1) a violation of the Sherman Act, 15 U.S.C. §1;[20] (2) a violation of the Equal Protection Clause of the Fourteenth Amendment;[21] (3) a violation of the Equal Protection Clause of the Georgia Constitution,[22] art. I, Sec. I, ¶ II; (4) a violation of the Due Process Clause of the Fourteenth Amendment;[23] and a violation of the Due Process Clause of the Georgia Constitution,[24] art. I, Sec. I, ¶

---

[17]   ECF 146, at 19.

[18]   *Id.* at 20.

[19]   *Id.*

[20]   ECF 148-1, ¶¶ 97–107.

[21]   *Id.* ¶¶ 108–18.

[22]   *Id.* ¶¶ 119–29.

[23]   *Id.* ¶¶ 130–37.

[24]   *Id.* ¶¶ 138–45.

I. The Court heard oral argument on the motion to amend on November 15, 2022.[25] SDC's motion is now ripe for consideration.

## II.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." SDC does not have Defendants' consent, so it must seek leave from the Court. The Rule also provides that "[t]he court should freely give leave when justice so requires." *Id*. However, the decision of whether to grant leave to amend is committed to the sound discretion of the trial court. *S. Grouts & Mortars., Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009); *Interstate Nat'l Dealer Servs., Inc. v. U.S. Auto Warranty, LLC*, No. 1:12-cv-04265-RWS, 2015 WL 13273318, at *8 (N.D. Ga. Dec. 11, 2015) ("[L]eave to amend is by no means automatic.").

The Eleventh Circuit has advised that a court should deny leave only "where there is [a] substantial ground for doing so, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Reese v.*

---

[25]    ECF 160.

*Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Despite the age of this case, no undue delay, bad faith, or dilatory motive can be ascribed to SDC, as this is its first motion to amend its pleadings, filed in response to Defendants' recent motion to dismiss and at the Court's invitation. For the same reason, Defendants would not suffer any undue prejudice if the Court allowed SDC to amend its complaint. Accordingly, the only *Foman* factor in play, and the only factor Defendants address, is futility.

"[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (cleaned up). To ascertain futility, the Court employs "[t]he same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)." *Bazemore v. U.S. Bank, N.A.*, 167 F. Supp. 3d 1346, 1354–55 (N.D. Ga. 2016). *See also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014) ("[W]hen a . . . court denies the

plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail. In other words, denial on grounds of futility is essentially a holding that the proposed amended complaint fails to state a claim upon which relief can be granted.") (citations omitted).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

## III.   Discussion

This time around, SDC challenges the Rule, as well as the Act, as allegedly anticompetitively and selectively applied to persons or entities engaged in scanning. In response, Defendants argue: (1) because scanning constitutes the

practice of dentistry under the Act, the Board has the authority to regulate it; (2) there is a rational basis for distinguishing between persons or entities taking digital scans and persons or entities performing the same scans under supervision of a licensed dentist or orthodontist or by "expanded-duty dental assistants" supervised by licensed dentists or orthodontists; and (3) Defendants are immune from any antitrust claims premised on the Act. If SDC's claims implicating the Act are futile, as Defendants argue, then SDC has no standing for the reasons discussed in the Court's July 15, 2022 Order.

### A.   The Effect of Judge Ray's Order

As a preliminary matter, the parties each premise substantial portions of their arguments on and debate the import of Judge Ray's May 8, 2019 Order (Judge Ray's Order).

SDC encourages this Court to adopt Judge Ray's Order insofar as he ruled that SDC's federal antitrust and constitutional claims in the original complaint implicating the Rule could proceed against the Board's members in their official capacities under *Ex Parte Young*, 209 U.S. 123 (1908), and to extrapolate from those rulings that SDC should be allowed to proceed on similar claims premised on the

Board's alleged selective application of the Act.[26] In doing so, SDC acknowledges that its claims for violations of the Equal Protection and Due Process Clauses of the Georgia Constitution "would be subject to dismissal on sovereign immunity grounds" and are included in its proposed amended complaint "solely for preservation purposes."[27] And SDC chides Defendants for "barely acknowledg[ing] Judge Ray's [Order]—addressing it only in a footnote—and assert[ing] that it does not control because SDC's original claims challenged the digital-scan rule itself whereas SDC now challenges the Board's application of the Act to SDC (in addition to [the Rule])."[28] However, SDC maintains—contrary to Judge Ray's Order—that its scanning business does not constitute the practice of dentistry under the Act.[29]

For their part, Defendants aver that, because SDC's new proposed claims challenge the Act instead of the Rule, Judge Ray's Order does not apply here.[30] However, they maintain one opportune exception to that position: Judge Ray's

---

[26]   ECF 157, at 16 n.2 (citing ECF 51, at 8).

[27]   *Id.*

[28]   *Id.* at 8 (cleaned up).

[29]   ECF 148-1, ¶ 22 ("SDC itself does not engage in the practice of dentistry; rather, SDC provides support for licensed dentists and orthodontists who themselves practice dentistry.").

[30]   ECF 154, at 19 n.8.

Order controls insofar as he decided that scanning constitutes the practice of dentistry under the Act.[31]

In essence, each side asks the Court to apply some, but not all, of Judge Ray's May 8, 2019 Order.[32] Though Undersigned has examined Judge Ray's rulings again in light of SDC's proposed amended complaint, it cannot help but endorse them as it did before.[33] Judge Ray drew appropriate conclusions at this stage of the case. It further strikes this Court that the parties' internally inconsistent arguments run afoul of the classic and fundamental adage about geese and ganders. As before, this Court declines to vacate any portion of Judge Ray's Order. *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984) (citation omitted) ("It is recognized that when cases are transferred from one judge to another judge in the same court, the transfer should not be treated as an opportunity to relitigate all the questions decided by the first judge."); *Abshire v. Seacoast Prod., Inc.*, 668 F.2d 832, 837–38 (5th Cir. 1982) (citations omitted) ("The general rule is that when a district judge has rendered an order or judgment and the case is then transferred to the calendar of

---

[31]   *Id.* at 25.

[32]   ECF 51.

[33]   ECF 146, at 12 ("The Order speaks for itself, and this Court will not abjure its plain language absent persuasive proof that doing so furthers the administration of justice.") (citation omitted).

another judge, the successor judge should not overrule the earlier order or judgment.").

Finally, SDC's proposed amended complaint again alleges that scanning is not the practice of dentistry as defined by the Act. However, unlike in its original complaint, SDC does not seek a declaration from this Court to that end.[34] In contrast to its claims arising under the Georgia Constitution, which SDC pled again for preservation purposes, its assertion that scanning isn't dentistry appears to have been waived. However, the Court need not decide waiver; SDC's allegations in the proposed amended complaint that scanning is not the practice of dentistry, with or without a corresponding claim for declaratory judgment, are in fact legal conclusions. The Court disregards them except insofar as they bear on any rational basis or lack thereof for the Board's application of the Act or issuance of the Rule. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (explaining the holding in *Iqbal*, 556 U.S. at 678). Even if such a challenge were properly before the Court, it would be precluded by Judge Ray's Order, as questions of statutory interpretation are pure questions of law, and no newly pled

---

[34]   *Compare* ECF 1, ¶ 87 *with* ECF 148-1.

fact or legal conclusion could alter the Court's interpretation.[35] *Snapp v. Unlimited Concepts*, Inc., 208 F.3d 928, 933 (11th Cir. 2000) (citation omitted).

Judge Ray also previously ruled that SDC's original complaint plausibly pled federal antitrust and constitutional claims with respect to the Board's promulgation of the Rule.[36] He rejected SDC's argument that sovereign immunity does not apply to the Board as a singular government entity acting *ultra vires*.[37] SDC "acknowledges Defendants' argument that its claims for violations of the Equal Protection and Due Process Clauses of the *Georgia* Constitution would be subject to dismissal on sovereign immunity grounds" and only alleges them now "for preservation purposes."[38] As Judge Ray held, the Board did not act *ultra vires*, so the Georgia constitutional claims are futile and may not proceed. In this respect, SDC's motion for leave to amend its complaint is **DENIED**.

---

[35]  This is especially true considering the Board apparently believed scanning was the practice of dentistry under the Act. *See Alvarado v. U.S. Atty. Gen.*, 610 F.3d 1311, 1314 (11th Cir. 2010) ("We review issues of statutory interpretation *de novo*, but we defer to a reasonable interpretation of the statute by the agency that administers it.") (citations omitted).

[36]  ECF 51, at 11, 13, 14–15.

[37]  *Id.* at 5–8.

[38]  ECF 157, at 11 (emphasis in original).

Thus, the Court need only consider, consistent with Judge Ray's Order, whether SDC's federal constitutional and antitrust claims premised on the Board's alleged selective application of the Act are futile.

### B.    The Rational Basis Analysis and SDC's Constitutional Claims

#### 1.    The Rational Basis Standard

The parties agree that SDC's federal Due Process and Equal Protection claims targeting the Board's application of the Act are subject to rational basis review. *Gary v. City of Warner Robins*, 311 F.3d 1334, 1338 n.10 (11th Cir. 2002) ("[T]he rational basis test utilized with respect to an equal protection claim is identical to the rational basis test utilized with respect to a substantive due process claim."). Rational basis review is a two-step inquiry: "(1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objection and the means it has chosen to achieve it." *Blue Kendall, LLC v. Miami Dade Cnty.*, 816 F.3d 1343, 1351 (11th Cir. 2016). *See also Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (affirming the "due process right to choose one's field of private employment" subject to "reasonable government regulation").

A plaintiff's burden to disprove a government body's legitimate purpose for enacting legislation is heavy: "[T]hose attacking the rationality of the legislative

classification have the burden 'to negative every conceivable basis which might support it.'" *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). "As long as the reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny." *Id.* (cleaned up). However, the rational basis inquiry is "not a toothless one." *Deen v. Egleston*, 597 F.3d 1223, 1230 (11th Cir. 2010) (cleaned up).

### 2.     Framing the Inquiry

Here, as the parties agreed at oral argument, the result of the rational basis inquiry hangs on how the case is framed. Defendants contend that the issue before the Court is "whether it's rational to require a license to practice dentistry ***in general***."[39] SDC, meanwhile, insists that the issue is whether it is rational to enforce the Act differently against unsupervised non-dentists as compared to supervised non-dentists, and whether Defendants' basis for the alleged discrimination—*i.e.*, health and safety—is in fact pretext.[40]

---

[39]   ECF 161, at 17:6–17:9 (emphasis added).

[40]   ECF 157, at 11.

Defendants attempt to construe the proposed amended complaint as either a general challenge to the Act, which they reason cannot survive, or a challenge to the Act as applied to SDC only. Defendants then cite years-old cases for the proposition that, where a general statutory classification is drawn, the classification, not each individual application of it, must be rationally related to a legitimate governmental interest. If Defendants' framing of the case were controlling, then the answer would be clear: "That the state may regulate the practice of dentistry, prescribing the qualifications that are reasonably necessary, and to that end may require licenses and establish supervision by an administrative board, is not open to dispute." *Semler v. Or. State Bd. of Dental Exam'rs*, 294 U.S. 608, 612 (1935).

However, SDC, as the plaintiff, is "the master of the complaint"; SDC, not Defendants, "selects the claims that will be alleged in the complaint" and shapes how they are alleged. *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997). And a closer look at the proposed amended complaint shows that Defendants' framing of the issue does not comport with SDC's averments. *Cf. Eck v. Battle*, 2014 WL 11199420, at *7 (N.D. Ga. July 28, 2014) ("Defendants' argument misconstrues plaintiff[']s claim. Plaintiff does not contend that the law irrationally discriminates between those who are and those who are not licensed to practice dentistry.

Instead, plaintiff alleges that the law, as interpreted by the Dental Board, irrationally discriminates between two classes of non-dentists: those who sell teeth-whitening products for customers to apply to their own teeth at home, who are not regulated under the Dental Practice Act; and those like plaintiff, who sell the same teeth-whitening products for customers to apply to their own teeth in a shopping mall or at a salon, who are considered to be engaged in the practice of dentistry.").

For example, SDC argues that, before it opened its first brick-and-mortar boutique in Georgia, scans were regularly performed by non-dentists like SDC's technicians.[41] Despite that this unlicensed practice of dentistry would have been illegal under the Act then, SDC alleges that the Board did not apply the Act to restrict certain categories of non-dentist "entities and individuals" from scanning until SDC entered the market, at which point the Board selectively applied the Act and ratified the Rule to distinguish between classes of non-dentists engaged in scanning.[42] Indeed, SDC clarified at the February 9, 2022 oral argument on the

---

[41]   ECF 148-1, ¶ 45.

[42]   *Id.* ¶¶ 46, 56, 112, 119–29. Because SDC alleges that it is part of the broader class of "persons and entities who offer digital scans by technicians (such as SDC),"*id.* ¶ 112, it does not assert an impermissible "class of one" Equal Protection claim. *See Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006) (explaining that a "class of one" claim exists where the "plaintiff alleges

instant motion to amend that it is "not taking the position that the State of Georgia cannot license dentists or restrict who practices dentistry," but rather "the position that when the [Board interprets the] [A]ct [and] tries to distinguish between non-dentists who can or cannot provide the digital scans[,] they need to do so in a way that has a rational basis."[43] This clarification comports with the "as applied" challenge to the Act pled in the proposed amended complaint, so Defendants' case law regarding general challenges or "as-applied-to-plaintiff" challenges is inapposite.

### 3.    The Rational Basis Analysis

Faced with these allegations in the proposed amended complaint, Defendants insist that "the Act's requirement that digital scans be taken by (or under the direct supervision of) a licensed dentist is rationally related to a number of legitimate state interests—most prominently the protection of public health and welfare."[44] They also invoke *Leeds v. Board of Dental Examiners of Alabama*, 382 F. Supp. 3d 1214 (N.D. Ala. 2019), *order vacated on reconsideration*, 2019

---

that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment") (cleaned up). It will be incumbent on SDC to marshal evidence to prove it is not a "class of one" at a future stage of this litigation.

43    ECF 161, at 6:21–6:25.

44    ECF 154, at 14.

WL 1696845 (N.D. Ala. Apr. 17, 2019), another case filed by SDC challenging Alabama's regulation of digital scans.

Though *Leeds* differed from this case insofar as it addressed a distinction in Alabama's regulation of Alabama-licensed dentists practicing in state and Alabama-licensed dentists practicing out of state, it implicated the exact scanning practice at issue here. *Id.* at 1244. The *Leeds* court dismissed SDC's constitutional claims, reasoning that the rational basis inquiry "occurs entirely in the abstract." *Id.* (quoting *United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018)). The *Leeds* court, seemingly *sua sponte*, identified four legitimate goals for requiring a dentist's physical presence when scanning:

> (1) ensuring proper sterilization procedures are followed to prevent the spread of illness; (2) ensuring that a skilled, trained dentist is available in the event of a sudden medical emergency caused by the iTero inadvertently dislodging a patient's crown; (3) ensuring that a licensed dentist has the opportunity to diagnose preexisting conditions that contraindicate the use of clear aligner therapy in the first place, such as gum disease; and (4) ensuring that a dentist can verify in real time that the iTero is accurately capturing a patient's oral cavity, to avoid having the procedure repeated and to prevent patients from receiving clear aligners that were fabricated based on inaccurate images.

*Id.* at 1245. All of these hypothetical interests could have justified the Alabama Board's regulation, and "[b]ecause the rational basis inquiry occurs entirely in the

abstract," the court reasoned that "no evidentiary record [was] necessary for the court to assess this challenge" as "no evidence that [SDC] might uncover through discovery could change the court's analysis . . . ."[45] *Id.*

Apart from *Leeds*, Defendants rely only on summary judgment cases, decided with the benefit of discovery and a full record, to argue that SDC's constitutional claims are futile and should not proceed to summary judgment. In response to Defendants, SDC insisted during oral argument that "courts [everywhere] have always held that to make this determination properly[,] you need to get a factual record."[46] Problematically, it cites few cases for this proposition. Its strongest analogue is *Julien v. Ga. Bd. of Dentistry*, 2020 WL 10485918, at *8 (N.D. Ga. Feb. 12, 2020). There, U.S. District Judge Michael L. Brown of this Court—faced with similar constitutional claims arising in the context of teeth whitening, not teeth straightening—denied the defendants' motion to dismiss. *Id.* ("Although Defendants may disagree with Plaintiffs' factual

---

[45] SDC suggests that, because the *Leeds* order was issued before Judge Ray's Order, Judge Ray must have considered its import and disregarded it. ECF 157, at 15. Of course, Judge Ray's Order does not cite *Leeds*, so the Court declines to so assume. *See generally* ECF 51.

[46] ECF 161, at 8:12–8:13.

allegations, a motion to dismiss is not the proper stage at which to resolve this factual dispute."). However, in doing so, he relied on Judge Ray's Order. *Id.*

Nevertheless, SDC argued during oral argument that, while "[i]t's certainly true under the case law that you can hypothesize about rational basis[,] . . . you can't just make stuff up that is not grounded in fact."[47] Indeed, while the black-letter rational basis standard appears clear enough, it imposes an exceptionally weighty burden on plaintiffs that seems as stringent as the *Twombly/Iqbal* pleading standard is lenient.

This Court is not the first to share in SDC's consternation. *See, e.g., Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) ("Competing standards for resolving a plaintiff's equal protection claim under Rule 12 complicate our analysis when we review a plaintiff's claim under the rational basis standard."); *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) ("A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R. Civ. P. 12(b)(6)."); *Baumgardner v. Cnty. of Cook*, 108 F. Supp. 2d 1041, 1055–56 (N.D. Ill. 2000) ("When considering the rational relationship standard in conjunction with the standard for a 12(b)(6) motion to dismiss, a confusing

---

[47]   *Id.* at 39:2–39:4.

situation is presented."). As far as Undersigned can tell, however, the Eleventh Circuit has not explicitly squared these two standards before, and *Leeds* is in no way binding.

More persuasive to the Court is the decision in *Wroblewski*. There, the Seventh Circuit considered the interplay between the motion to dismiss and rational basis standards at issue here:

> The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations. The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

*Wroblewski*, 965 F.2d at 459–60 (cleaned up). Following the *Wroblewski* court's rationale, if this Court were certain that SDC's constitutional claims were implausibly pled and incapable of proof, then it would be erroneous not to deem the proposed amended complaint futile in this respect and deny SDC's motion to amend. But the Court cannot reach that conclusion on this proposed amended complaint. *See Daniels v. Sutton*, 2022 WL 686832, at *11 (Jan. 25, 2022) (allowing

the plaintiff's Equal Protection claim to proceed, and reasoning that "[d]ismissal is . . . appropriate when it is clear that a plaintiff could never state a plausible claim for relief. [However, where a] "[c]ourt is not prepared to conclude, after accepting all of Plaintiff's allegations as true, that Plaintiff cannot prevail as a matter of law . . . . the appropriate result . . . is to permit Plaintiff to conduct discovery.") (cleaned up), *report and recommendation adopted*, 2022 WL 686434 (S.D. Fla. Mar. 8, 2022).

In light of *Wroblewski*, and in the face of a dearth of Eleventh Circuit authority reconciling the motion to dismiss and rational basis standards as *Leeds* did, this Court finds that SDC plausibly pled its federal constitutional claims related to the Board's application of the Act. The Court is further heartened by the fact that Judge Ray determined SDC's rule-based constitutional claims were plausibly pled, and SDC's "as applied" Act-related claims do not require a materially different analysis. The Court thus declines to construe the rational basis standard as a rule of law that necessitates dismissal before discovery.

Because SDC's federal constitutional claims are not futile, it is entitled to discovery. So, on this ground, SDC's motion for leave to amend is **GRANTED**.

## C.  SDC's Antitrust Claim

Defendants argue that the proposed amended antitrust claim is barred by the so-called state-action doctrine because it seeks to enjoin enforcement of the

Act.[48] As detailed above, the proposed amended complaint does not seek to enjoin the Act; it challenges the Board's alleged selective enforcement of the Act for anticompetitive reasons and seeks to enjoin Defendants from applying the Act to prohibit certain non-dentists from performing scans outside of the physical presence of a licensed dentist or orthodontist. For the reasons that follow, SDC's antirust claim is not futile, and its motion for leave to amend is **GRANTED** on this basis.

### 1.    The Sherman Act Standard

Section 1 of the Sherman Act prohibits any unreasonable "contract, combination . . ., or conspiracy, in restraint of trade." 15 U.S.C. § 1. A plaintiff pleads an antitrust claim by alleging facts manifesting a "unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement," or "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (cleaned up). Despite the statute's far-reaching language, the Supreme Court "has long recognized that Congress intended to outlaw only *unreasonable* restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (emphasis added). A restraint

---

48    ECF 154, at 19.

violates Section 1 if it is *per se* unreasonable or fails the "rule of reason" test. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006).

In this Circuit, a Section 1 claim analyzed under the rule of reason requires the plaintiff to show "(1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004) (cleaned up). "In alleging the anticompetitive effect of the defendant's conduct, an antitrust plaintiff must show harm to competition rather than to competitors," *id.* (cleaned up), and "define the relevant market and establish that the defendants possessed power in that market." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996). To show an anticompetitive effect on the market, the plaintiff "may establish either (1) that the restraint had an 'actual detrimental effect' on competition, or (2) that the restraint had the potential for genuine anticompetitive effects and that the conspirators had market power in the relevant market." *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016). "The plaintiff has the burden of demonstrating damage to competition with specific factual allegations." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (cleaned up).

Defendants argue that SDC's allegations do not successfully plead an antitrust claim meeting these criteria and are futile because SDC is "seeking to enjoin enforcement of the Act."[49] However, Defendants' argument fails in its framing of the proposed amended complaint for the reasons discussed above. In its proposed amended complaint, SDC avers that "members of the Board have agreed and acted upon a policy of excluding certain non-dentists from providing digital scans without the 'direct supervision' of dentists, thereby harming competition in the [r]elevant [m]arket."[50] SDC defined the relevant market as the "market for aligner treatment for mild to moderate malocclusion in Georgia," and it is essentially undisputed that the Act conferred on the Board the power to regulate in this arena.[51] SDC alleges that competition in the relevant market will be harmed by the enforcement of the Rule and the selective application of the Act because restricting the categories of individuals who can perform scans in the relevant market has or will diminish Georgians' access to care,[52] increase costs paid by Georgians for aligner treatment, immunize licensed dentists and orthodontists

---

[49]   ECF 154, at 19.

[50]   ECF 148-1, ¶ 99.

[51]   *Id.* ¶ 67.

[52]   *Id.* ¶¶ 70–75.

from competition,[53] place greater burden than necessary on the performance of a routine and safe procedure,[54] and create unnecessary barriers to employment for Georgia citizens.[55] Considering all of this, SDC has clearly met its pleading burden.

### 2.    The *Parker* State-Action Defense

Defendants, the individual members of the Board acting in their official capacities, also argue that "*Parker* immunity bars [SDC's] proposed antitrust claim because it is seeking to enjoin enforcement of the Act—and the Act is legislation passed by Georgia's General Assembly."[56] "The States, . . . when acting in their respective realm, need not adhere in all contexts to a model of unfettered competition." *N.C. State Bd. of Dental Exam'rs v. F.T.C.*, 574 U.S. 494, 503 (2015). Indeed, in *Parker v. Brown*, the Supreme Court held that the antitrust laws confer a sort of immunity on anticompetitive conduct by the States when they are acting as sovereigns. 317 U.S. 341, 350–51 (1943). But a non-sovereign actor controlled by active market participants—such as the Board—enjoys *Parker* immunity only if "'the challenged restraint . . . [is] clearly articulated and affirmatively expressed as

---

53    *Id.* ¶¶ 81–83.

54    *Id.* ¶¶ 92–94.

55    *Id.* ¶ 96.

56    ECF 154, at 24.

state policy,' and . . . 'the policy . . . [is] actively supervised by the State.'" *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013) (quoting *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980)).

Judge Ray previously determined that Defendants failed to show that Georgia actively supervised their alleged anticompetitive conduct such that they are immune from suit.[57] That same reasoning applies to SDC's challenges based on the Board's alleged selective enforcement of the Act. Because Defendants have not established that the Board received active State supervision when allegedly selectively applying the Act or promulgating the Rule, and considering SDC's allegations that the Board was not actively or adequately supervised,[58] Defendants are not entitled to *Parker* immunity at this early stage.

In reaching this conclusion, the Court is reassured that it need not conclusively answer the *Parker* question now, as it is not jurisdictional in nature like other immunity doctrines. Though the Supreme Court has often referred to "*Parker* immunity" as a shorthand, the Eleventh Circuit has clarified that *Parker* provides a waivable, nonjurisdictional affirmative defense. *Bolt v. Halifax Hosp. Med. Ctr.*, 874 F.2d 755, 756 (11th Cir. 1989) (*en banc*). Courts in this Circuit—

---

[57]  ECF 51, at 10–13.

[58]  ECF 148-1, ¶ 68.

including in cases Defendants cite—have declined to dismiss claims in the face of the *Parker* defense under almost identical circumstances. *See Leeds*, 382 F. Supp. at 1237 ("[T]o claim *Parker* immunity, the Board had to show that its prohibition of nondentist teeth whitening was really the state's prohibition of nondentist teeth whitening.") (citation omitted). And discovery will necessarily flesh out whether Georgia intended to treat non-dentists engaged in scanning differently, as the Board allegedly did. *N.C. State Bd. of Dental Exam'rs*, 574 U.S. at 503–04 (explaining that the dentistry board would enjoy *Parker* protection only if the challenged conduct was "actively supervised by the state") (cleaned up).

### 3.    Causation and Concerted Action to Restrain Trade

Defendants first argue that the Act, not the Board, caused SDC's alleged injury, and that SDC fails to allege that Defendants are the cause.[59] A valid legislative bar can break the causal chain in an antitrust case. *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017) (collecting cases). But Defendants have not offered any cases, and the Court knows of none, that stand for the proposition that a state actor like the Board can selectively apply

---

[59]   ECF 154, at 25–26.

the same regulation to one group and not to another similarly situated group in an anticompetitive manner without flouting antitrust laws.

Further, as SDC emphasized during oral argument, its proposed amended complaint contains allegations that the Board engaged in a "conspiracy that resulted in the enactment of [the] [R]ule and in the interpretation of the [A]ct to require onsite supervision as opposed to remote supervision."[60] SDC avers that the Board conspired "not only . . . to put the rule in place, [but] also . . . to interpret the [A]ct to require supervision onsite," as the Act mandates "direct supervision" by licensed dentists for certain non-dentists but does not define "direct supervision" to mean onsite supervision.[61] In doing so, SDC avers, Defendants inoculated themselves and other brick-and-mortar dentists from competition from so-called mavericks like SDC. In response, Defendants suggested that the Board merely applied a preexisting definition of "direct supervision" from the dental

---

[60]   ECF 161, at 13:6–13:10.

[61]   *Id.* at 9:10–9:15. Regarding the definition of "direct supervision" in the Rule, Defendants suggested during oral argument that the Board "merely adopted the same definition [of "direct supervision"] that [the Georgia General Assembly applied] to dental hygienists . . . so it's not like the [B]oard is . . . on a big limb here." *Id.* 26:1–26:8. However, while this suggestion might be borne out in discovery, it is only supported by counsel's representations at this stage and is therefore disregarded for purposes of deciding the motion to amend.

hygiene context to this context, but that is a factual dispute not capable of being resolved at this stage.[62]

Second, Defendants argue that SDC's new antitrust claim fails because SDC has not plausibly alleged an agreement among Defendants to restrain trade.[63] They argue that SDC's allegations that the Board members threatened to enforce the Act against SDC[64] do not plausibly allege such an agreement.[65] Setting aside the fact that Judge Ray already held that SDC's original complaint plausibly alleged concerted action, Undersigned finds that the allegations of the Board members' threats to enforce the Act, coupled with the promulgation of the Rule and allegations of discussions between the Board and trade associations engaged in direct competition with SDC, are enough to carry SDC's burden to plausibly plead concerted anticompetitive action. Accordingly, the antitrust claim in the proposed second amended complaint is not futile.

---

[62]   *Id.*

[63]   ECF 154, at 28–29.

[64]   ECF 148-1, ¶¶ 61, 99–100, 105.

[65]   ECF 154, at 29.

**IV.    Conclusion**

      SDC's motion for leave to amend is **GRANTED IN PART and DENIED IN PART**. All of SDC's federal constitutional and antitrust claims survive the Rule 12(b)(6) standard, Fed. R. Civ. P. 12(b)(6), so SDC is permitted to proceed on those claims. However, SDC's Georgia constitutional claims are futile, and SDC is not entitled to proceed on those claims.

      The Clerk is **DIRECTED** to docket the proposed amended complaint as a new docket entry, and to substitute the defendants in the original complaint with the defendants in the proposed amended complaint. Fed. R. Civ. P. 25(d). Defendants are **ORDERED** to Answer the amended complaint within 21 days of this Order.

      **SO ORDERED** this 31st day of March, 2023.

Steven D. Grimberg
United States District Court Judge